SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**State v. Nathan N. Shaw (A-33/34-16) (078247)**

**Argued January 28, 2019 -- Decided May 13, 2019**

**TIMPONE, J., writing for the Court.**

In this case, the Court considers whether evidence found in a motel room and vehicle and defendant Nathan Shaw's statement to police should have been suppressed.

Jasmine Hanson was staying at the Crystal Inn motel in Neptune City. She called the front desk to complain she had been bitten by bed bugs. The motel owner inspected Hanson's room using his pass key. He saw a plastic bag containing what he suspected were narcotics and called the police. Officer Jason Rademacher had the motel owner lead him to Hanson's room where, again using his pass key, the motel owner unlocked the door for the officer to enter. Inside, Rademacher saw what appeared to be drugs, as well as a measuring cup and scale. A criminal history check on Hanson revealed an outstanding traffic warrant and a recently issued traffic summons on a 2012 black Chevrolet Tahoe, and its plate number.

Rademacher transported the evidence to the station and returned in an unmarked vehicle to wait for Hanson's arrival. Shortly thereafter, the black Tahoe pulled into a parking space. The front passenger was Keon Bolden, Hanson was in the driver's seat, and in the back seat were Shakera Dickerson and Shaw. Rademacher arrested Hanson. The officer asked to search the Tahoe; Hanson refused consent. A drug-detection canine was brought to perform an exterior sniff of the vehicle. The officers conducted warrant checks on the remaining passengers. Only Dickerson's came back positive. She was arrested and placed in a second patrol car. Shaw and Bolden were patted down and seated in separate patrol cars, uncuffed. Hanson again refused to consent to a search of the vehicle.

The handler led the canine to the Tahoe. Shaw told an officer that he had a bag of marijuana in the car, and the canine alerted to the presence of narcotics. Shaw was arrested. An officer told Hanson that Shaw admitted he had marijuana in the vehicle and, at that point, she consented to the vehicle search. She signed a consent-to-search form, but did not initial the line attesting that she gave her consent free of coercion.

The officers found drugs in the car and within a tote bag on the back seat of the car. All four passengers were charged with multiple counts of possession and possession with intent to distribute the drugs found in both the motel room and the tote bag.

1

All defendants moved to suppress the drug evidence seized from the motel room and the Tahoe. The motion court denied their suppression motion. Shaw pleaded guilty to one count of third-degree possession of CDS with intent to distribute.

The Appellate Division affirmed the denial of Shaw's motion to suppress the contents of the tote bag, finding he lacked standing to challenge its search, but reversed the denial of his motion to suppress his statement made to police while in their custody. In response to an argument by a co-defendant, the panel also found that the warrantless search of the motel room was illegal.

The Court granted Shaw's petition for certification, 228 N.J. 506 (2017), and the State's cross-petition, 228 N.J. 518 (2017). Following oral argument on November 8, 2017, the Court ordered this case remanded to the Law Division for the court "to address the application of the inevitable discovery doctrine and the independent source doctrine to the admissibility of the evidence seized in the motor vehicle."

On remand, the parties presented no further testimony. Relying on the record as it had been developed at the suppression hearing, the court determined the inevitable discovery and the independent source doctrines both applied and that the evidence was admissible.

**HELD:** Defendant's confession and the drug evidence must be suppressed.

1. Under the third-party intervention doctrine, a person's reasonable expectation of privacy is not violated by the actions or search of a private actor. See State v. Wright, 221 N.J. 456, 459 (2015). Fourth Amendment protections apply only to governmental action, and a subsequent search by law enforcement -- so long as it does not exceed the scope of the private search -- may not require a warrant if it does not infringe any constitutionally protected privacy interest that had not already been frustrated as a result of the private conduct. The doctrine traditionally applied to searches of objects either physically conveyed or reported to the police. See id. at 459, 468-69. In Wright, the Court held that the doctrine could not be applied to searches of private dwellings -- including rented apartments -- under our State Constitution. Id. at 476. Although Wright discussed apartments, its reasoning applies with equal force to motel rooms. Where a motel owner or employee finds contraband in a guest's room, "the police can use that information to obtain a search warrant and then conduct a search." Id. at 478-79. "In the time it takes to get the warrant, police officers can secure the [motel room] from the outside, for a reasonable period of time, if reasonably necessary to avoid any tampering with or destruction of evidence." Id. at 478. Here, the motel search was unconstitutional and the illegal fruits of that search must be suppressed. (pp. 17-24)

2. Police must have particularized suspicion in order to conduct an investigatory stop, and the duration of an investigative stop must be limited in time and scope to the purpose that justified the stop in the first place. If the officer's conduct is more intrusive than necessary, the investigative stop turns into a de facto arrest. Once it was determined that Shaw was

2

unarmed and had no outstanding warrants, there was no particularized suspicion that Shaw was engaged in criminal activity that would justify Shaw's further detention. Under the circumstances here, isolating Shaw in the back of a patrol car despite a negative warrant check was a de facto and an unlawful arrest. (pp. 24-27)

3. It was during that period of unlawful detention that Shaw stated there was marijuana in the bag. To decide whether to suppress a statement obtained after an unlawful arrest, courts consider three factors: the temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct. Here, Shaw's confession was a product of his unlawful de facto arrest and must be suppressed. Shaw's confession occurred during his unlawful detention, and the Court is not persuaded that the presence of the drug-detection canine purged the taint of the illegal arrest. Shaw was never informed of his right to remain silent and was held without individualized suspicion. Although his confession was not made in response to an interrogation, the Court is not convinced it was a product of his own free will. (pp. 27-30)

4. The Court next addresses Shaw's standing to challenge the search of the tote bag. Whenever a defendant is charged with committing a possessory drug offense -- as in this case -- standing is automatic, unless the State can show that the property was abandoned or the accused was a trespasser. The tote bag was found in the back seat of a car that had four occupants. They were ordered out of the car. The State simply has not established that the bag was abandoned property. The trespasser exception has even less relevancy. The record is devoid of any evidence that Shaw put the drugs in the tote bag without Dickerson's knowledge. Shaw had automatic standing to challenge the search of the bag. (pp. 30-33)

5. The Court thus considers whether the search fell within the consent-search exception to the warrant requirement. An individual's voluntary consent to search a constitutionally protected area eliminates the need for law enforcement to obtain a warrant. When Hanson consented to the search, she had already been arrested and handcuffed. The officers asked her multiple times for consent to search the vehicle. She relented only after an officer informed her of Shaw's unlawfully obtained confession. The warrantless search of the Tahoe was unconstitutional and the evidence seized through that search is therefore subject to suppression. Nor can the evidence come in through Shaw's confession. (pp. 34-36)

6. The State failed to make the necessary showing under either inevitable discovery or the independent source exceptions to the exclusionary rule. Accordingly, the unconstitutionally obtained evidence remains suppressed. (pp. 36-39)

**The judgment of the Appellate Division is affirmed in part and reversed in part and the matter is remanded to the trial court.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE'S opinion.**

# SUPREME COURT OF NEW JERSEY
## A-33/34 September Term 2016
### 078247

State of New Jersey,

Plaintiff-Respondent/
Cross-Appellant,

v.

Nathan N. Shaw, a/k/a Dion Shaw,
a/k/a Leroy Anderson,

Defendant-Appellant/
Cross-Respondent.

State of New Jersey,

Plaintiff,

v.

Keon L. Bolden,

Defendant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| January 28, 2019 | May 13, 2019 |

Margaret McLane, Assistant Deputy Public Defender,
argued the cause for appellant/cross-respondent (Joseph

E. Krakora, Public Defender, attorney; Margaret McLane, of counsel and on the briefs).

Frank Muroski, Deputy Attorney General, argued the cause for respondent/cross-appellant (Gurbir S. Grewal, Attorney General, attorney; Frank Muroski and Jenny M. Hsu, Deputy Attorney General, of counsel and on the briefs).

Alexander Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation and Rutgers Constitutional Rights Clinic Center for Law and Justice, attorneys; Alexander Shalom, Edward L. Barocas and Jeanne M. LoCicero, of counsel and on the briefs, and Ronald K. Chen on the briefs).

JUSTICE TIMPONE delivered the opinion of the Court.

This appeal concerns a cascade of missteps by police, resulting in several constitutional violations. The case begins with the warrantless search of a motel room, followed by the extended detention of automobile passengers without reasonable suspicion. One defendant then involuntarily consents to a search of an automobile, culminating in the warrantless search of a tote bag found in the car in which another defendant was a passenger. The State raises a number of well-expressed arguments in support of the admissibility of the evidence obtained from the searches. Nevertheless, the record before us compels the suppression of all evidence seized.

2

To provide an overview, we will begin our analysis by considering the application of the third-party intervention doctrine -- a recognition that law enforcement need not obtain a warrant to "reexamine property that has been searched by a private actor and presented to law enforcement" under certain circumstances, State v. Wright, 221 N.J. 456, 479 (2015) -- to the warrantless search of a motel room. Next, we examine whether a confession spontaneously made during an extended detention not predicated on individualized reasonable suspicion must be suppressed under the circumstances. Thereafter, we review the events surrounding the search of a tote bag and assess whether a passenger had standing to challenge the search of a tote bag that ultimately proved to belong to another passenger. We consider whether the principles of the trespasser and abandoned property exceptions to automatic standing apply under these circumstances, and whether the driver's consent to the vehicle search justified the search of the tote bag. Lastly, we address the applicability of the inevitable discovery doctrine and independent source rule to this case.

For the reasons stated below, we hold that the police's warrantless search of the motel room ran afoul of the Fourth Amendment to the U.S. Constitution and Article I, Section 7 of the New Jersey Constitution. We further find the third-party intervention doctrine does not apply to motel rooms

3

and that the State's warrantless entry into the room was unlawful. We also find the defendant's extended detention constituted a de facto arrest and that the State failed to show his confession was not a by-product of that arrest. Concerning the tote bag, we find defendant had automatic standing, the trespass and abandoned property exceptions do not apply, and the State failed to show the voluntariness of the driver's consent. Finally, we will not apply the inevitable discovery or independent source exceptions to the exclusionary rule because on remand the State chose not to develop the record on those issues.

With that, we find defendant's confession and the drug evidence must be suppressed.

## I.

## A.

The facts are culled from the testimony elicited at the suppression hearing. Florida resident Jasmine Hanson was staying at the Crystal Inn motel in Neptune City, New Jersey. She called the front desk to complain she had been bitten by bed bugs and demanded a full refund. She was referred to the motel's owner. Later that afternoon, the motel owner inspected Hanson's room. When no one answered his knocks, he entered her room using his pass key. In search of bed bugs, the motel owner pulled a bed comforter down,

4

revealing a plastic bag containing what he suspected were narcotics. The motel owner called the police and reported his suspicion.

Upon his arrival, Officer Jason Rademacher had the motel owner lead him to Hanson's room where, again using his pass key, the motel owner unlocked the door for the officer to enter. Inside, Rademacher saw a clear plastic bag containing what appeared to him to be two other clear plastic bags of crack cocaine and several small glassine bags of heroin. Nearby, the officer saw a jar of what he suspected was synthetic marijuana on the nightstand and a glass measuring cup containing a spoon and a white, rock-like substance in a drawer. Next to the measuring cup was a black scale dusted with a white powder.

Rademacher contacted his supervisor, who sent Sergeant William Kirchner to the motel as backup. The officer requested a criminal history check on Hanson. It revealed an outstanding traffic warrant and a recently issued traffic summons on a 2012 black Chevrolet Tahoe, and its plate number. Rademacher collected all the drug evidence and photographed Hanson's motel room.

Rademacher transported the evidence to the station and returned in an unmarked vehicle to wait for Hanson's arrival. Shortly thereafter, the black Tahoe pulled into a parking space. The front passenger, Keon Bolden,

5

immediately exited the vehicle. Rademacher drew his weapon and, keeping it at his side, ordered Bolden back into the Tahoe. Hanson was in the driver's seat. In the back seat were Shakera Dickerson and Nathan Shaw. Rademacher stood by the driver's door awaiting backup.

At least three units arrived on the scene. Hanson produced her license and the Tahoe's rental agreement. Rademacher informed Hanson she had an active warrant and arrested her. The police patted Hanson down, handcuffed her, and placed her in the back of a patrol car. The officer asked to search the Tahoe; Hanson refused consent. Rademacher and Kirchner explained that a drug-detection canine would be brought to perform an exterior sniff of the vehicle. Hanson did not change her mind. Rademacher testified that they waited until all of the occupants of the Tahoe were removed from the vehicle before they requested the canine. The canine's handler testified that when he arrived there were still occupants in the vehicle, and he had to wait for them to be removed before he could conduct the exterior sniff. The trial court adopted the handler's narrative, while the Appellate Division endorsed the officer's version of events.

The officers conducted warrant checks on the remaining passengers. Only Dickerson's warrant check came back positive. She was arrested and

6

placed in a second patrol car. Shaw and Bolden were patted down and each seated in separate patrol cars, uncuffed.

The canine's handler attempted to explain the sniff procedure to Hanson; Hanson refused to speak to him and again refused to consent to a search of the vehicle. The handler led the canine to the Tahoe. During the sniff, Shaw told an officer that he had a bag of marijuana in the car. The canine alerted to the presence of narcotics. Shaw was arrested. An officer told Hanson that Shaw admitted he had marijuana in the vehicle and, at that point, she consented to the vehicle search. She signed a consent-to-search form, but did not initial the line attesting that she gave her consent free of coercion.

Rademacher searched the car, immediately finding the brown bag containing marijuana. Meanwhile, other officers found a bag of synthetic marijuana and a box of plastic bags in the center console. On the backseat, in between where Dickerson and Shaw were sitting, Rademacher found a green and white tote bag. From inside the tote bag he recovered 113 stamped glassine bags of heroin, a plastic bag containing suspected crack cocaine, and a purse in which he found a plastic bag of what appeared to be marijuana. Twenty-four of the glassine bags of heroin were stamped in red ink with the phrase "Limit 50." That mark resembled the stamp found on the glassine bags of heroin in Hanson's motel room.

Laboratory testing confirmed the suspected drugs were marijuana, crack cocaine, and heroin. All four passengers were charged with multiple counts of possession and possession with intent to distribute the drugs found in both the motel room and the tote bag.

B.

All defendants moved before the Superior Court, Law Division to suppress the drug evidence seized from the motel room and the Tahoe.

After finding that the charged defendants had automatic standing to challenge the search, the motion court denied their suppression motion with the following findings:

(1) The motel owner's initial entry into Hanson's motel room did not violate the Fourth Amendment because the Fourth Amendment affords individuals protection only from unreasonable state action -- not from private individuals like the motel owner. The court found the motel owner "surrendered that evidence to the officer by reporting the drugs and asking for someone to come and investigate."

(2) The initial stop of the Tahoe was lawful due to Hanson's outstanding traffic warrant, and the stop did not turn into a de facto arrest of Shaw or Bolden because the officers had "a reasonable and articulable basis that criminal activity was afoot to continue the detention after

8

completion of the background checks based on the totality of the circumstances including[] the motel room filled with suspected narcotics, the out-of-state driver's license, and the brief duration of the rental car agreement." Highlighting Shaw and Bolden had not been handcuffed, the court found it reasonable to place them in patrol cars during the canine sniff and found the extension of the stop minimal because the drug-detection canine was already on the scene when the passengers were removed.

(3) Hanson's consent justified a search of the vehicle and all of its contents, including the tote bag. Distinguishing State v. Suazo, 133 N.J. 315, 322 (1993), the court emphasized that no one claimed ownership of the tote bag, thus it was reasonable for the officer to assume it was Hanson's and that she had consented to its search. The court remarked that the location of the tote bag was insufficient to put Rademacher on notice that the passengers had a superior privacy interest in it.

### C.

Shaw and Bolden entered guilty pleas; Shaw pleaded guilty to one count of third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(b)(3), and Bolden pleaded guilty to one count of first-degree possession of

CDS, N.J.S.A. 2C:35-5(b)(1), and one count of possession of CDS with intent to distribute within five hundred feet of certain public property, N.J.S.A. 2C:35-7.1. On appeal, Shaw argued his statement must be suppressed because it was the fruit of an unlawful arrest, and that the drug evidence from the Tahoe must be suppressed because Hanson did not have the authority to consent to a search of the tote bag or because her consent was a product of his unlawful arrest.

Bolden asserted that the drug evidence from Hanson's motel room must be suppressed because Rademacher's warrantless search was illegal.

The Appellate Division first addressed Bolden's argument. The State abandoned its initial assertion that the motel search was exempt under the third-party intervention doctrine and, instead, argued Bolden did not have standing to challenge the search of Hanson's motel room because there was no evidence establishing that he had an expectation of privacy in Hanson's room. The appellate panel noted that the inapplicability of the third-party intervention doctrine only crystalized after this Court's decision in Wright, and found a remand proper to give Bolden the opportunity to establish a reasonable expectation of privacy in Hanson's motel room. The Appellate Division vacated the denial of Bolden's suppression motion and ordered the case remanded.

10

Turning to Shaw's arguments, the Appellate Division found the extension of his initial detention was unlawful because it exceeded the dictates of Terry v. Ohio, 392 U.S. 1 (1968). The panel highlighted that the trial court made no findings as to Shaw except to hold that he was in a car with Hanson, who had an outstanding arrest warrant and was the registered guest of the motel room where CDS was discovered. The panel found that there was no reason to continue to detain Shaw once the warrant search on him came up empty and without any evidence of a connection to Hanson's motel room.

The panel examined the circumstances around Shaw's admission that he had marijuana in the vehicle, emphasizing that Shaw was secured in a police vehicle for an extended period of time without cause and was not free to leave. Based on those findings, the panel determined the admission to be the fruit of an illegal detention that necessitated suppression under State v. Johnson, 118 N.J. 639, 653 (1990).

The panel concluded Hanson's consent to the search of the Tahoe was involuntary and the trial court erred by not considering the guidelines outlined in State v. King, 44 N.J. 346, 352-53 (1965). The appellate panel noted that, had the trial court considered the King factors, it would have recognized the presence of an abundance of factors suggesting coercion that could not be overcome by Hanson's incomplete consent form.

11

Lastly, having found Hanson's consent invalid, the Appellate Division concluded that Shaw did not have standing to challenge the search of the tote bag. Without evidence that any of the passengers claimed ownership of the tote bag or objected to its search, the panel found Shaw without a protected privacy interest in its contents.

D.

We granted Shaw's petition for certification, 228 N.J. 506 (2017), and the State's cross-petition, 228 N.J. 518 (2017). We also granted the American Civil Liberties Union of New Jersey (ACLU) amicus curiae status.

Following oral argument on November 8, 2017, we ordered this case remanded to the Law Division for the court "to address the application of the inevitable discovery doctrine and the independent source doctrine to the admissibility of the evidence seized in the motor vehicle." In that order we noted that the remand court could take testimony and make new fact findings.

E.

On remand, the parties presented no further testimony. Instead, the court relied on the record as it had been developed at the suppression hearing. The court determined the inevitable discovery doctrine and the independent source doctrine both applied.

Beginning with the inevitable discovery doctrine, the remand court found it applied for three reasons: (1) Hanson would have been arrested due to her warrant, and the vehicle would have been searched following her arrest pursuant to a lawful inventory search; (2) the positive indication by the drug-detection canine gave police probable cause to obtain a search warrant; and (3) Shaw admitted the marijuana in the car was his.

As for the independent source doctrine, the remand court determined it applied despite the officers' unlawful entry into the motel room because the phone call by the motel owner reporting suspected narcotics, alone, would have been sufficient to give police reasonable suspicion to stop Hanson and search her vehicle.

## II.

### A.

In his petition, Shaw contends that he had automatic standing under State v. Alston, 88 N.J. 211 (1981), to challenge the search of the tote bag and the Appellate Division erred by requiring him to demonstrate a reasonable expectation of privacy. An expectation of privacy analysis, Shaw submits, is appropriate only when a court must determine whether there can be a reasonable expectation of privacy in a novel class of objects, and tote bags, he states, are not a novel class of objects.

13

In support of Shaw, the ACLU asks us to extend <u>Wright</u> and hold the third-party intervention doctrine cannot exempt a search of a motel room from the warrant requirement. The ACLU also asks us to find the Appellate Division erred by placing the burden on Bolden to prove he had a reasonable expectation of privacy in the motel room. The ACLU further argues the officers did not have reasonable suspicion even to ask for Hanson's consent because the evidence from the motel was unlawfully obtained.

The State responds to Shaw's petition by submitting that a reasonable expectation of privacy analysis is proper because this Court has not yet addressed whether someone can have a reasonable expectation of privacy in another's bag. The State contends that Shaw lacked any expectation of privacy in Dickerson's tote bag because he hid contraband in it without her knowledge. The State also argues that the trespasser exception to automatic standing should apply.

Additionally, the State argues the evidence seized from the tote bag is admissible under the inevitable discovery doctrine. Specifically, the State alleges the drug evidence in the tote bag would have been inevitably discovered pursuant to the lawful consent search or, alternatively, pursuant to a warrant that would have been granted due to the positive indication by the drug-detection canine.

14

In its separate response to the ACLU, the State alleges amicus is injecting new arguments that are not before the Court, highlighting that only Bolden challenged the search of the motel room on appeal and he did not petition for review. Alternatively, the State asserts that neither Shaw nor Hanson had a reasonable expectation of privacy in the motel room because Hanson's guest status was either relinquished or terminated when she demanded a full refund or when the motel owner found the drugs. The State urges this Court not to extend Wright and to apply the third-party intervention doctrine. Lastly, the State claims the motel owner's phone call reporting unlawful narcotics is an independent source to suspect Hanson and her cohorts of unlawful drug activities.

## B.

In its cross-petition, the State raises five arguments.

Emphasizing "[Shaw] was in the close confines of an automobile with Hanson that had just arrived at the motel where evidence of drug trafficking was seized," the State alleges it was reasonable for the police to assume the passengers were Hanson's confederates and thus it was lawful for them to detain Shaw, even after their fruitless warrant check.

15

Flowing from that point, the State argues Shaw's detention from the time Rademacher stopped the vehicle to when Shaw confessed was not unreasonable or a de facto arrest under the circumstances.

The State submits Shaw's spontaneous admission was voluntary, because he knew when he saw the drug-detection canine that his marijuana would inevitably be discovered.

The State also maintains Hanson's consent was voluntary under the circumstances, considering that the officers honored her previous refusals, and it was reasonable for the officers to believe Hanson had authority to consent to a search of the entire vehicle and its contents.

Finally, citing the framework for inevitable discovery in State v. Sugar, 100 N.J. 214, 238, 240 (1985), the State submits "the dog sniff gave the police an 'independent source' of knowledge to arrest defendant for constructive or joint possession of the drugs found inside of Hanson's vehicle."

Shaw responds that, while the initial stop may have been legal, his continued detention and prolonged isolation in a police vehicle was unlawful and a de facto arrest. Because his confession was a product of the illegal arrest, he reasons, it must be suppressed as fruit of the poisonous tree. As for Hanson's consent, he argues it was either a product of his unlawful arrest or coerced.

Lastly, Shaw argues the independent source and inevitable discovery doctrines do not apply because they were not raised before the trial court. On the merits, Shaw contends there was no separate search to serve as an independent source for the drug evidence, and the police cannot show by clear and convincing evidence that a hypothetical warrant would have been granted.

C.

Following the remand and arguing the State failed to produce evidence that a warrant would have been sought and obtained, Shaw maintains the inevitable discovery and independent source doctrines do not apply. The State reasserts the doctrines do apply because the motel owner's report served as an independent source for lawfully detaining the vehicle, and police would inevitably have discovered the drug evidence in the vehicle because the police would have obtained a warrant in accord with police procedure after the drug dog's positive indication.

III.

We address chronologically each issue as it arose during the course of the motel and vehicle search, using the search of the motel as the starting point. As usual, we defer to the fact findings of the trial court, provided they are supported by substantial credible evidence in the record, <u>State v. Davila</u>,

17

203 N.J. 97, 109 (2010), but review the trial and remand courts' legal conclusions de novo, State v. Vargas, 213 N.J. 301, 327 (2013).

Although Shaw did not challenge the search of the motel room on appeal to the Appellate Division or this Court, the Appellate Division found the motel search unlawful based on Bolden's challenge. The illegality of that search was not appealed by the State. Yet the State argues, in part, that the extended investigatory detention of Shaw was based on a reasonable suspicion of illicit activity in light of the drugs found in Hanson's motel room. Because the search of the motel room is so entangled with the parties' arguments about the validity of Shaw's extended detention, because consideration of the search's constitutionality "is necessary to the complete determination" of this matter, and because the record before us is adequate to permit review of this issue, we now exercise original jurisdiction and review the validity of the search of Hanson's motel room. R. 2:10-5; Price v. Himeji, LLC, 214 N.J. 263, 294-95 (2013).

The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution both safeguard the right of all individuals to be secure in their houses against unreasonable searches and seizures. State v. Hathaway, 222 N.J. 453, 468 (2015) (quoting U.S. Const. amend. IV) (citing N.J. Const. art. I, ¶ 7). When law enforcement undertakes a

18

search without a warrant, that search is presumptively unlawful. State v.

Pineiro, 181 N.J. 13, 19 (2004). To overcome the presumption, the State has

the burden of demonstrating the search fell within a recognized exception to

the warrant requirement. Vargas, 213 N.J. at 314.

Under the third-party intervention doctrine, a person's reasonable

expectation of privacy is not violated by the actions or search of a private,

rather than government, actor. See Wright, 221 N.J. at 459. In such a

situation, the initial search by the private actor does not trigger Fourth

Amendment protections, which apply only to governmental action. See

Burdeau v. McDowell, 256 U.S. 465, 475 (1921). And the subsequent search

by law enforcement -- so long as it does not exceed the scope of the private

search -- may not require a warrant if it does "not infringe any constitutionally

protected privacy interest that had not already been frustrated as a result of the

private conduct." United States v. Jacobsen, 466 U.S. 109, 120, 123 (1984).

As the United States Supreme Court has explained, "[o]nce frustration of the

original expectation of privacy occurs, the Fourth Amendment does not

prohibit governmental use of the now-nonprivate information." Id. at 117.

The third-party intervention doctrine traditionally applied to searches of

objects either physically conveyed or reported to the police, such as

incriminating evidence taken from an office and misdirected or damaged

19

packages.  See Wright, 221 N.J. at 459, 468-69.  In Wright, we held that the doctrine could not be applied to searches of private dwellings -- including rented apartments -- under our State Constitution.  221 N.J. at 476.

We first distinguished searches of the home from the searches to which the doctrine had been previously applied, stressing that "[h]omes are filled with intimate, private details about peoples' lives that are ordinarily free from government scrutiny," and "[a]n officer's entry into a home is a far greater intrusion than a search of a package presented to the police."  Id. at 460.  We noted that the principles applicable to privately owned houses are equally applicable to rental units, observing that tenants do not cede their state and federal rights to their landlord when they rent an apartment.  Id. at 475.  We acknowledged that, under certain circumstances, landlords are permitted entry into a tenant's apartment, but emphasized that, generally, "a landlord does not have the authority to consent to a search of a tenant's private living space."  Id. at 476 (citing Chapman v. United States, 365 U.S. 610 (1961); State v. Coyle, 119 N.J. 194, 215-16 (1990)).

Critically, we said "[a] landlord, like any other guest, may tell the police about contraband he or she has observed.  And the police, in turn, can use that information to apply for a search warrant.  But that course of events does not create an exception to the warrant requirement."  Id. at 476-77 (citation

20

omitted).  Stressing that the United States Supreme Court had never extended the doctrine to home searches, and predicting from case law that it would not, we likewise declined to expand the doctrine in that way.  Id. at 476.

One of the cases on which we relied in reaching that conclusion, id. at 472, was United States v. Allen, 106 F.3d 695, 699 (6th Cir. 1997), in which the United States Court of Appeals for the Sixth Circuit refused to extend the third-party intervention doctrine to a motel room.  Allen had paid for his motel room in cash, including an additional deposit for any telephone charges he might incur.  Allen, 106 F.3d at 697.  When he depleted his balance, the motel clerk called to inform him that his remaining credit was insufficient to cover his stay that night.  Ibid.  When Allen failed to pay or to answer his phone, the motel manager went to Allen's room and, after her knock went unanswered, used her key to enter.  Ibid.  Inside, she saw loose marijuana and bricks of marijuana lying about.  Ibid.  She then exited the room, used a special key to deadbolt the door, and called the police.  Ibid.  When police arrived, they entered the room and observed the marijuana the motel manager had reported.  Ibid.  Allen was arrested upon his return, and police obtained a search warrant for the motel room, his vehicle, and his briefcase.  Ibid.

On appeal from the denial of Allen's suppression motion, "[t]he government argue[d] that the police officers' warrantless search of Allen's

21

motel room was not illegal because it did not exceed in scope the initial private search conducted by the motel manager." Id. at 698. The Sixth Circuit declined to apply the third-party intervention doctrine and found "the motel manager's search of Allen's room did not extinguish Allen's privacy interest in the room's contents." Id. at 699.

We agree that hotel guests have a reasonable expectation of privacy in their rooms akin to that held by property owners and tenants. See Georgia v. Randolph, 547 U.S. 103, 112 (2006) ("[A] hotel guest customarily has no reason to expect the manager to allow anyone but his own employees into his room." (citing Stoner v. California, 376 U.S. 483, 489 (1964); United States v. Jeffers, 342 U.S. 48, 51 (1951))). This Court has acknowledged the warrant requirement extends to hotel rooms, Hathaway, 222 N.J. at 468 (citing Stoner, 376 U.S. at 486), and has noted that federal courts have as well, see Hinton, 216 N.J. at 232 n.6 (citing United States v. Young, 573 F.3d 711, 716, 720-21 (9th Cir. 2009); United States v. Bautista, 362 F.3d 584, 590 (9th Cir. 2004)). While a hotel or motel guest's expectation of privacy may be somewhat lesser in consideration of the realities of the relationship between a guest and motel owner, it is not so reduced that mere entry by the motel owner can be said to entirely deprive the guest of his or her privacy interests.

22

Although Wright discussed apartments, its reasoning applies with equal force to motel rooms. We therefore reject the State's argument and decline to extend the private search doctrine to hotel and motel rooms. The third-party intervention doctrine cannot excuse law enforcement's search of a motel room from the warrant requirement. To reiterate the guidance we provided in Wright, where a motel owner or employee finds contraband in a guest's room, "the police can use that information to obtain a search warrant and then conduct a search." Wright, 221 N.J. at 478-79. "In the time it takes to get the warrant, police officers can secure the [motel room] from the outside, for a reasonable period of time, if reasonably necessary to avoid any tampering with or destruction of evidence." Id. at 478.

Here, the State's reliance on the third-party intervention doctrine was misplaced, and the State failed to show the warrantless search of the motel room was exempt from the warrant requirement. As a result, we find the motel search was unconstitutional and that the illegal fruits of that search must be suppressed.

We note, as a general matter, that the third-party intervention doctrine is a poor fit to living spaces. Rather, a standing analysis seems more appropriate. See, e.g., Allen, 106 F.3d at 699 (finding that, while the third-party intervention doctrine did not apply, termination of Allen's guest status

23

eliminated any expectation of privacy he had in his motel room).  In response to an argument raised by amicus -- one that was not discussed below -- the State asserts Shaw does not have standing to challenge the search of the motel room because he did not demonstrate a connection to the motel room or because Hanson's privacy interest in the room was terminated.  As part of that argument, however, the State highlights that Shaw was charged with constructive possession of the drugs recovered from the motel room.  Because this was not raised earlier, we decline to engage in a lengthy discussion of the issue.  Nevertheless, we highlight that the State's argument neglects our automatic standing jurisprudence, Alston, 88 N.J. at 228-30, and incorrectly attempts to shift the burden onto Shaw to prove a privacy interest in the motel room, see State v. Brown, 216 N.J. 508, 529 (2014).

IV.

We next consider whether Shaw was lawfully detained and whether, as a result, his statement that he had a bag of marijuana in the car was admissible against him.

A.

Under the Fourth Amendment and Article 1, Paragraph 7, the warrantless seizure of an individual is presumptively unlawful.  State v. Coles, 218 N.J. 322, 342 (2014).  In limited circumstances, however, police may

24

lawfully detain someone for investigatory purposes. Ibid.; see also Terry, 392 U.S. at 24. Police must have particularized suspicion in order to conduct an investigatory stop, State v. Chisum, 236 N.J. 530, 545 (2019), meaning "[t]he stop must be reasonable and justified by articulable facts; it may not be based on arbitrary police practices, the officer's subjective good faith, or a mere hunch," Coles, 218 N.J. at 343.

Moreover, "[t]he duration of an investigative stop must be limited in time and scope to the purpose that justified the stop in the first place." State v. Gibson, 218 N.J. 277, 292 (2014). An extended detention will be found unreasonable if it lasts longer than necessary to effectuate the purpose of the continued detention, or if law enforcement uses more intrusive means than necessary to conduct the investigation. Chisum, 236 N.J. at 547. If the officer's conduct is more intrusive than necessary, the investigative stop turns into a de facto arrest. State v. Dickey, 152 N.J. 468, 478 (1998). "Thus, the detention must be reasonable both at its inception and throughout its entire execution." Coles, 218 N.J. at 344.

There is no simple test for determining at which point a prolonged investigative stop turns into a de facto arrest, but important factors include unnecessary delays, handcuffing the suspect, confining the suspect in a police

car, transporting the suspect, isolating the suspect, and the degree of fear and humiliation engendered by the police conduct.  Ibid.

Here, when Rademacher approached the vehicle, all he knew was that a substantial amount of drugs were found in Hanson's motel room, that she was driving a rental car, and that she was not a New Jersey resident.  On that basis, the State attempts to justify seizing Shaw, patting him down, and thereafter isolating him in a police car to wait until a drug-detection canine arrived on the scene and sniffed Hanson's vehicle.

Once it was determined that Shaw was unarmed and had no outstanding warrants, however, there was no particularized suspicion that Shaw was engaged in criminal activity that would justify Shaw's further detention.  We do not accept the State's argument that a person's mere presence in the car of a suspected drug dealer warrants indefinite detention without any individualized suspicion.  Rather than conducting a true investigatory stop, the officers appear to have been operating from the assumption that the passengers were Hanson's confederates.  While such a hunch may be reasonable, it is insufficient to justify the extent of the investigatory detention here.  Our Constitution requires officers to pursue the least intrusive means when they conduct an extended investigatory detention.  Where an officer's hunch proves correct, we still cannot sanction an extended investigatory detention of a passenger if the

officer lacked particularized suspicion based on articulable facts. Our Constitution does not provide hindsight as a justification for an investigatory detention.

In short, we agree with the Appellate Division that the State failed to demonstrate any reason for continuing the investigatory detention of Shaw after his warrant check returned negative. On the record established at the suppression hearing, the police lacked the constitutional minimum to hold Shaw while they obtained the drug-detection canine and had the dog sniff the vehicle. Under the circumstances here, isolating Shaw in the back of a patrol car despite a negative warrant check was a de facto and an unlawful arrest.

It was during that period of unlawful detention that Shaw stated there was marijuana in the bag. We next consider whether that statement is admissible.

## B.

"As a general rule, a confession obtained through custodial interrogation after an illegal arrest should be excluded unless the chain of causation between the illegal arrest and the confession is sufficiently attenuated so that the confession was 'sufficiently an act of free will to purge the primary taint.'" State v. Worlock, 117 N.J. 596, 621 (1990) (quoting Wong Sun v. United States, 371 U.S. 471, 486 (1963)). "The question whether a confession is the

27

product of a free will under <u>Wong Sun</u> must be answered on the facts of each case. No single fact is dispositive." <u>Brown</u>, 422 U.S. at 603.

In <u>State v. Barry</u>, we explained that, when considering confessions made during illegal arrests, the overarching question is "whether the confession falls on one side or the other of the line that separates confessions which resulted from an exploitation of an illegal arrest from those which were the product of the defendant's free will, the taint of the illegal arrest having been sufficiently attenuated." 86 N.J. 80, 87 (1981). To reach that determination and, thus, to decide whether to suppress a statement obtained after an unlawful arrest, we consider three factors: "the temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct." <u>Barry</u>, 86 N.J. at 87; <u>accord</u> <u>Brown</u>, 422 U.S. at 603-04.

The length of time between the unlawful arrest and the confession is the least determinative due to its ambiguity; a long detention could suggest increasing pressure or dissipation of the initial shock of arrest, and a short detention could indicate the confession was a product of the initial shock or that the confession was unrelated to the arrest. <u>Worlock</u>, 117 N.J. at 622-23. The conditions of the unlawful detention should be considered because they "can be as important as the temporal proximity." <u>Id.</u> at 623.

28

The presence of intervening circumstances that break the causal connection between the arrest and confession can be the most important consideration.  Ibid.  Such intervening circumstances could include termination of the unlawful detention, Wong Sun, 371 U.S. at 491; presenting the detainee with new evidence, Barry, 86 N.J. at 89-90; or evidence that the defendant intended to turn himself in, Worlock, 117 N.J. at 624.

And, finally, the purposefulness and flagrancy of the police misconduct is particularly relevant in determining whether a confession was the fruit of an unlawful arrest and has justified suppression where the illegal conduct was "calculated to cause surprise, fright, and confusion."  Brown, 422 U.S. at 605; see also Worlock, 117 N.J. at 624 (1990).

Applying those principles here, we agree with the Appellate Division and find Shaw's confession was a product of his unlawful de facto arrest and must be suppressed.  Shaw's confession occurred during his unlawful detention, and we are not persuaded that the presence of the drug-detection canine purged the taint of the illegal arrest.  Shaw was never informed of his right to remain silent and was held without individualized suspicion so the police could investigate his connection to suspected drug activity.  Although his confession was not made in response to an interrogation, we are not convinced it was a product of his own free will.  The aim of the exclusionary

29

rule is to prevent exploitation of unlawful means by police; to vindicate that aim and the constitutional protections against unlawful seizures, we find suppression of Shaw's admission appropriate.

## V.

We now turn to the search of the tote bag. We begin with whether Shaw had automatic standing to challenge that search, then consider the applicability of exceptions to the automatic standing rule, and finally determine whether Hanson's consent to search provided an exception to the warrant requirement.

## A.

The New Jersey Constitution provides greater protections from warrantless searches and seizures than the Fourth Amendment of the Constitution of the United States. Alston, 88 N.J. at 226. Despite our Constitution's similar language, in Alston, we strengthened our legitimate expectation of privacy standard. Id. at 228. "[U]nder Article I, Paragraph 7 of the New Jersey Constitution, 'a criminal defendant is entitled to bring a motion to suppress evidence obtained in an unlawful search and seizure if he has a proprietary, possessory or participatory interest in either the place searched or the property seized.'" State v. Randolph, 228 N.J. 566, 581 (2017) (quoting Alston, 88 N.J. at 228).

Our standard both incorporates the legitimate expectation of privacy standard and offers broader protections that advance three important State interests. State v. Johnson, 193 N.J. 528, 543 (2008). The first is the State's interest in protecting defendants from having to admit possession to vindicate their constitutional right against unreasonable searches and seizures. Ibid. The second is to prevent the State from arguing a defendant should be subject to criminal liability for possessing contraband, while asserting the same defendant had no privacy interest in the area from which police obtained the contraband without a warrant. Ibid. Our third aim is to increase privacy protections for our citizens and to promote respect for our Constitution by discouraging law enforcement from carrying out warrantless searches and seizures where unnecessary. Ibid.

Whenever a defendant "is charged with committing a possessory drug offense -- as in this case -- standing is automatic, unless the State can show that the property was abandoned or the accused was a trespasser." Randolph, 228 N.J. at 571-72. "[T]he State bears the burden of showing that defendant has no proprietary, possessory, or participatory interest" in the property searched. Id. at 582. We have repeatedly rejected arguments that "automatic standing does not relieve defendant of his obligation to show that he had a reasonable expectation of privacy in the [area] searched." Id. at 583

31

(discussing Johnson, 193 N.J. at 546). Importantly, we will not assess whether someone has a reasonable expectation of privacy if we have already determined that the location from which the contraband was seized enjoys constitutional protection and there are no new or unusual circumstances necessitating such an analysis. Id. at 584.

We find no reason to engage in an expectation of privacy analysis here. The State alleges Shaw was akin to a trespasser because he put the drugs in Dickerson's bag without her knowledge. But the State failed to produce any evidence to support that point. During the suppression hearing, counsel made passing reference to the tote bag being Dickerson's, but the record is bereft of anything suggesting Shaw put the heroin in the tote bag without her consent.

By arguing Shaw possessed the drugs and had no expectation of privacy in the tote bag, the State appears to do exactly what this Court discouraged in Alston, that is, arguing Shaw has no expectation of privacy in the tote bag, but was so inextricably linked to drugs found within it that he should be held criminally liable for possession. Because the State failed to produce any evidence that would warrant scrutiny of Shaw's privacy interests, we find Shaw had automatic standing to challenge the search of the tote bag.

B.

Our inquiry cannot end there. In <u>Randolph</u>, "we recognize[d] three exceptions to the automatic standing rule in cases concerning real property." <u>Id.</u> at 585. Under two of those exceptions, we held someone accused of possession will not have standing to challenge the search if the State shows the police officer who conducted the search had an objectively reasonable basis, based on the totality of the circumstances, to believe the defendant was trespassing on the property or that the building was abandoned. <u>Id.</u> at 585, 587 (citing <u>Brown</u>, 216 N.J. at 532).

The State asks us to apply by analogy either the trespasser or abandoned property exception to the drug evidence found in the tote bag. We cannot, and we dispense with both arguments quickly.

The tote bag was found in the back seat of a car that had four occupants. They were ordered out of the car. The State simply has not established that the bag was abandoned property. <u>See</u> <u>State v. Carvajal</u>, 202 N.J. 214, 223-24 (2010).

The trespasser exception has even less relevancy. The record is devoid of any evidence that Shaw put the drugs in the tote bag without Dickerson's knowledge, or that the officer had an objectively reasonable basis to believe he had done so.

33

C.

Finally, having established that Shaw had automatic standing to challenge the search of the tote bag, we address whether Rademacher's warrantless search of it fell within the consent-search exception to the warrant requirement and whether the drug evidence obtained must be suppressed.

An individual's consent to search a constitutionally protected area eliminates the need for law enforcement to obtain a warrant. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). The consent must be voluntary, that is, "'unequivocal and specific' and 'freely and intelligently given.'" King, 44 N.J. at 352 (quoting Judd v. United States, 190 F.2d 649, 651 (D.C. Cir. 1951)). "The burden of proof is on the State to establish by clear and positive testimony that the consent was so given." Ibid. The ultimate determination must rest on the facts of each individual case. State v. Hagans, 233 N.J. 30, 40 (2018). And a court's determination must be based on the totality of the circumstances and be supported by sufficient credible evidence in the record. Id. at 42-43.

New Jersey's Constitution also provides greater protections than the federal constitution when it comes to consent searches. State v. Carty, 170 N.J. 632, 639, 647, modified on other grounds, 174 N.J. 351 (2002). Law enforcement must have a "reasonable and articulable suspicion to believe that

34

an errant motorist or passenger has engaged in, or is about to engage in, criminal activity," before officers may ask for consent to search a vehicle. Id. at 647. This prophylactic rule protects the public from the unjustified extension of motor vehicle stops and from fishing expeditions unrelated to the reason for the initial stop. Ibid.

Leaving aside the unconstitutional search of Hanson's motel room -- which the State uses in part to try to justify the motor vehicle stop and search -- we find the State failed to demonstrate Hanson's consent was voluntary. The trial court did not make specific findings on this issue, but did recite the requirement that the State prove Hanson's consent was given voluntarily. The trial court appears to have relied on the consent-to-search form, on which Hanson tellingly left uninitialed the affirmation that her consent was not a product of coercion.

We agree with the Appellate Division's assessment of Hanson's ultimate consent to search. At the time, Hanson had already been arrested and handcuffed. The officers asked her three different times for consent to search the vehicle. She relented only after an officer informed her of Shaw's unlawfully obtained confession.

Based on this record, we find the trial court's ruling of no coercion in Hanson's consent to search not supported by sufficient credible evidence. We

35

conclude the warrantless search of the Tahoe was unconstitutional and that the evidence seized through that search is subject to suppression. Nor can the evidence come in through Shaw's confession, obtained -- as discussed above -- as the result of an unlawful detention and which law enforcement used to secure Hanson's consent to search. Whether viewed through the lens of Hanson's non-voluntary consent or Shaw's coerced confession, the evidence obtained from the vehicle is subject to exclusion as fruit of the poisonous tree. See State v. O'Neill, 193 N.J. 148, 171 n.13 (2007) ("The fruit-of-the-poisonous-tree doctrine denies the prosecution the use of derivative evidence obtained as a result of a Fourth or Fifth Amendment violation."); Johnson, 118 N.J. at 652.

V.

Lastly, we address whether the inevitable discovery doctrine or independent source rule should be applied to resurrect the suppressed evidence obtained in violation of the constitution.

"When the seizure of evidence is the result of the State's unconstitutional action, the principal remedy for violation of the constitutional right to be free from unreasonable searches and seizures is exclusion of the evidence seized." State v. Bryant, 227 N.J. 60, 71 (2016). The purpose of the exclusion is its deterrent effect. Ibid. (citing State v. Novembrino, 105 N.J.

36

95, 137-38 (1987)).  The two exceptions to the exclusionary rule the State asks us to apply in this case -- the inevitable discovery doctrine and the independent source rule -- bear a facial similarity but have different conceptual bases. State v. Smith, 212 N.J. 365, 393-95 (2012).

The inevitable discovery doctrine emanates from a recognition by both this Court and the Supreme Court of the United States that the exclusionary rule's purpose of preventing the use of evidence unlawfully obtained by law enforcement is not served -- especially in light of the heavy societal cost -- where the police would have inevitably discovered the evidence.  Sugar, 100 N.J. at 237.  In circumstances in which the State can show law enforcement would have discovered the evidence absent their illegal conduct, we have held the exclusionary rule should not be applied because to do so would place the prosecution at an unjustified disadvantage.  Id. at 237-38.  For the inevitable discovery exception to apply, the State must prove that

> (1) proper, normal and specific investigatory procedures would have been pursued in order to complete the investigation of the case; (2) under all of the surrounding relevant circumstances the pursuit of those procedures would have inevitably resulted in the discovery of the evidence; and (3) the discovery of the evidence through the use of such procedures would have occurred wholly independently of the discovery of such evidence by unlawful means.
>
> [Smith, 212 N.J. at 391 (quoting Sugar, 100 N.J. at 238 (citations omitted)).]

"[A]s with the [independent source rule], [the State] must establish all three elements by clear and convincing evidence," and its "failure to satisfy any one prong of the standard will result in suppression of the challenged evidence." Id. at 395 (quoting State v. Holland, 176 N.J. 344, 363 (2003)).

The independent source rule, like the inevitable discovery doctrine, allows the admission of evidence that was discovered wholly independently from the constitutional violation. Holland, 176 N.J. at 354.

> First, the State must demonstrate that probable cause existed to conduct the challenged search without the unlawfully obtained information. It must make that showing by relying on factors wholly independent from the knowledge, evidence, or other information acquired as a result of the prior illegal search. Second, the State must demonstrate in accordance with an elevated standard of proof, namely, by clear and convincing evidence, that the police would have sought a warrant without the tainted knowledge or evidence that they previously had acquired or viewed. Third, regardless of the strength of their proofs under the first and second prongs, prosecutors must demonstrate by the same enhanced standard that the initial impermissible search was not the product of flagrant police misconduct.
>
> [Id. at 360-61.]

The inevitable discovery doctrine and independent source rule were not discussed by the trial court or the Appellate Division. A review of the record shows the prosecutor made only passing reference to the inevitable discovery doctrine, and the Appellate Division briefly mentioned "independent source"

38

when explaining the fruit of the poisonous tree doctrine. Despite the sparse record, we ordered a remand and gave the State an opportunity to develop those two points. The State failed to produce any further support for its position, effectively declining the opportunity. Without a sufficiently developed record, we decline to review these issues and reject the remand court's legal conclusions. The State failed to make the necessary showing under either exception to the exclusionary rule. Accordingly, the unconstitutionally obtained evidence remains suppressed.

VI.

To summarize, we observe today that the third-party intervention doctrine, which concerns frustration of someone's privacy interests, cannot be applied to hotel or motel rooms as the State contends. A challenge to automatic standing is more appropriate, but it is the State that bears the burden of demonstrating a defendant did not have a proprietary, possessory, or participatory interest in the motel room. Here, just as the motion court found, Shaw had automatic standing to challenge the warrantless search of the motel room because he was charged with possession of the drugs recovered from it. The State's bare assertion that Shaw had no connection to the motel room is insufficient to meet its burden. The motel search was thus not exempt from the warrant requirement.

With respect to Shaw's confession, we agree with the Appellate Division that isolating Shaw in the back of a patrol car and extending his investigatory detention without a reasonable, articulable, and individualized suspicion amounted to an unlawful arrest. We find Shaw's confession was not voluntary and was a by-product of the unlawful de facto arrest, so we affirm the panel's holding that it must be suppressed.

As to the drug evidence found in Dickerson's tote bag, we reverse the Appellate Division, finding instead that Shaw had automatic standing to challenge the search of the tote bag as a result of his being charged with possession of the drugs found within it. We also find the trespasser and abandoned property exceptions inapplicable. So, the drug evidence found in the tote bag must be suppressed.

We affirm the Appellate Division's finding that the State failed to establish the voluntariness of Hanson's consent.

Finally, because the inevitable discovery and independent source exceptions to the warrant requirement were not raised below, and because the State did not develop the record when given the opportunity to do so before the trial court on remand, we find the State has not met its burden to establish either exception and reject the remand court's legal conclusions.

The judgment of the Appellate Division is affirmed in part and reversed in part. The matter is remanded to the trial court, where the State may proceed with the charges against Shaw without the benefit of his confession or the evidence obtained from the tote bag. Additionally, we reverse the trial court and find the warrantless search of Hanson's motel room unlawful and unconstitutional, and we suppress the drug evidence obtained from Hanson's motel room.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE'S opinion.