**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5903-17

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MARCUS CARTER, a/k/a
MARK HELALE,

    Defendant-Appellant.

_____

Argued January 27, 2021 – Decided May 18, 2021

Before Judges Whipple, Rose and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 14-06-0876.

Whitney F. Flanagan, First Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Whitney F. Flanagan, of counsel and on the briefs).

Ian C. Kennedy, Assistant Prosecutor, argued the cause for appellant (Mark Musella, Bergen County Prosecutor, attorney; Jaimee M. Chasmer, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

On the morning of August 22, 2013, law enforcement officers assigned to the U.S. Marshals Fugitive Task Force (TFOs) arrested defendant Marcus Carter on an out-of-state warrant as he exited a hotel in East Rutherford. Police recovered two plastic bags containing cocaine that defendant had tossed into the bushes as he attempted to flee. Two guns were seized from the bathroom in the hotel room where defendant was staying.

Following his arrest, defendant was charged in an eleven-count Bergen County indictment with: second-degree conspiracy to distribute a controlled dangerous substance (CDS), N.J.S.A. 2C:5-2, 2C:35-5(a)(1), and 2C:35-5(b)(2) (count one); third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3)(b) (count two); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (counts three and four); fourth-degree possession of hollow-nose bullets, N.J.S.A. 2C:39-3(f) (count five); second-degree possession with intent to distribute CDS, N.J.S.A. 2C:35-5(a)(1), and 2C:35-5(b)(2) (count six); third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(1) (count seven); second-degree possession of a firearm during a certain drug offense, N.J.S.A. 2C:39-4.1(a) (counts eight and nine); and certain persons not to possess a handgun, N.J.S.A. 2C:39-7(b) (counts ten and eleven).

2

Prior to trial, the trial court severed counts one, ten, and eleven. Pertinent to this appeal, the court denied defendant's pretrial motion to suppress the handguns seized from the hotel room and two motions to reconsider the denial of his suppression motion. At the conclusion of the State's case, the court denied defendant's motion for judgment of acquittal on the gun charges. In a bifurcated trial, the jury found defendant guilty of counts two through nine, and thereafter convicted him of counts ten and eleven. Defendant then pled guilty to count one. After granting the State's motion for a mandatory extended term, N.J.S.A. 2C:43-6(f), and ordering appropriate mergers, defendant was sentenced to an aggregate twenty-year prison term, with a parole ineligibility term of eight years and six months.

Defendant now appeals from a June 12, 2018 judgment of conviction (JOC), raising the following arguments for our consideration:

POINT I

THE GUNS SEIZED FROM [DEFENDANT]'S HOTEL ROOM WITHOUT A WARRANT SHOULD HAVE BEEN SUPPRESSED BECAUSE THE PRIVATE SEARCH AND COMMUNITY CARETAKING EXCEPTIONS DID NOT APPLY.

A. The Trial Court Erred [i]n Relying on the Private Search Exception Because it Does Not Apply to Hotel Rooms.

A-5903-17

B. The Trial Court Erred in Relying on the Community Caretaking Exception Because [i]t Does Not Apply Where There Was No Emergency.

POINT II

THE MOTION FOR JUDGMENT OF ACQUITTAL FOR POSSESSION OF A HANDGUN WHILE COMMITTING A DRUG OFFENSE SHOULD HAVE BEEN GRANTED BECAUSE THE STATE DID NOT PROVE ANY NEXUS BETWEEN THE GUNS AND THE DRUG OFFENSE.

POINT III

THE JURY CHARGE FOR POSSESSION OF A FIREARM WHILE COMMITTING A DRUG OFFENSE WAS INSUFFICIENT BECAUSE IT DID NOT TELL THE JURY IT HAD TO FIND A SPACIAL AND TEMPORAL LINK BETWEEN THE GUN AND THE DRUGS.
(Not raised below)

POINT IV

THE TRIAL COURT ERRED IN ASSESSING DUPLICATIVE FINES ON MERGED OFFENSES.

We affirm defendant's convictions, finding insufficient merit in the contentions raised in points II and III to warrant extended discussion in a written opinion, R. 2:11-3(e)(2), beyond the comments that follow. The State having conceded the contentions asserted in point IV, we remand for the limited purpose

4

of correcting the JOC to remove the fines assessed on the merged conviction. We focus instead on point I.

I.

Two TFOs and a lieutenant with the East Rutherford Police Department testified at the suppression hearing on August 22, 2017. Their testimony revealed the following facts. Defendant was wanted on multiple warrants issued in New York. Based on information received, the TFOs believed defendant was staying at the Extended Stay America hotel located on Route 3. Around 11:20 a.m. on August 22, 2013, the TFOs established surveillance outside the hotel. When defendant exited the rear of the building, officers ordered him to stop, but he ignored their commands. Defendant ran toward Route 3 but was arrested before he reached the highway. The plastic bags defendant discarded when he attempted to flee contained more than 120 smaller baggies of cocaine.

After defendant was arrested, the hotel's manager, Rafael Urraca, approached the TFOs, requesting they remove defendant's belongings from Room 211, where defendant was staying. A bag containing defendant's belongings was placed in his car parked in the hotel's lot. Detective Sergeant Justin Blackwell testified he "was aware that [Urraca] wanted [defendant]'s

5

belongings removed" but he "[did]n't recall if [his] guys went in there to get them or if [Urraca] brought them to the back door."

In any event, "[s]everal minutes later, the manager came out a second time" and advised Blackwell "he had gone back into Room 211 . . . to make sure that all the property was out of there" and "found two handguns in a drawer." Blackwell and other TFOs accompanied Urraca to Room 211, where Urraca showed the officers two silver handguns protruding from a black purse situated in an open drawer in the bathroom. Officers seized both guns, which were loaded with hollow-point bullets.

East Rutherford Police Lieutenant Michael Giancaspro testified that he also spoke with Urraca at the hotel. Urraca told Giancaspro "after he observed [defendant] being placed under arrest, he wanted all his property out of the room." Urraca "didn't want [defendant] staying at the hotel no more [sic]." On cross-examination, Giancaspro acknowledged he had spoken with another officer about applying for a search warrant, but they "decided not to." The following questioning ensued:

> DEFENSE COUNSEL: [W]hat was the sum and substance of that discussion?
>
> GIANCASPRO: It was that [defendant] was no longer in possession of the hotel room. Therefore, we didn't believe that it was going to be an invasion of his

6

privacy. . . . [T]he hotel manager already took custody of the hotel room and . . . he was the one that wanted it removed.

DEFENSE COUNSEL: [W]hy did you believe that [defendant] no longer had any right to the hotel room?

GIANCASPRO: The hotel manager advised us all his property was out of the hotel room and he was no longer staying there.

Giancaspro was not present when the guns were removed from the room.

At the conclusion of the hearing, defendant argued he had the "same expectation of privacy" in the hotel room as he had in his home. Defendant therefore contended the court should reject the State's reliance on the private search doctrine.

Relying on our Supreme Court's decision in State v. Wright, 211 N.J. 456, 479 (2015), the State countered that a warrant was unnecessary because Urraca, a private citizen, notified police about his discovery of the weapons and the officers' search did "not exceed the scope of the private search." Notably, the State also argued Urraca's actions following defendant's arrest by "requesting that his belongings be removed . . . for all intents and purposes" indicated defendant was "evicted from the room." According to the State, defendant's "privacy interests diminished at that point."

A-5903-17

Immediately following argument, the trial court issued a decision from the bench, denying defendant's motion under two exceptions to the warrant requirement. Crediting the officers' testimony, the court detailed its credibility and factual findings. In reaching its decision, the court recognized "defendant's contention that under certain circumstances, the defendant has a reasonable expectation of privacy in his hotel room."

Citing case law governing third-party or private searches, however, the court observed "the Fourth Amendment restricts only State action. Searches and seizures conducted by private parties are not subject to constitutional restraints." The court found that "Urraca's initial search of the premises was not State action, but rather the conduct of a private citizen. Urraca was not acting as an agent of the government or with participation or knowledge of a governmental official." Citing Wright, the trial court agreed with the State "that although third-party intervention or [the] private search doctrine does not apply to a home, it does apply here in the hotel." 221 N.J. at 478. The court therefore upheld the present search under that exception to the warrant requirement.

In reaching its conclusion, the trial court distinguished our decision in State v. Premone, 348 N.J. Super. 505 (App. Div. 2002), where we invalidated the warrantless search of a bag left behind in a hotel room. Because officers in

8

Premone unzipped the bag turned over by the motel owner – who had not opened the bag – we found the search exceeded the scope of the private actor. Id. at 513-14. Conversely, the trial court in the present case determined the TFOs "learned nothing that had not been previously learned during the private search. Therefore, the State action . . . infringed upon no legitimate expectation of privacy and, hence, the guns in this case [we]re admissible."

The trial court also was persuaded that the warrantless search of defendant's hotel room was valid under the community caretaker exception to the warrant requirement. Relying on our decision in State v. Navarro, 310 N.J. Super. 104 (App. Div. 1998), the court found "the private actor in this case, Urraca, or other hotel staff members and guests, could have been hurt themselves if this gun [sic] was not removed from the room[,]" thereby "pos[ing] a risk and danger to those within the hotel and the public." Accordingly, the court declined to reach the State's alternate argument that the warrantless search was valid under the inevitable discovery exception.

Thereafter, defendant moved for reconsideration of the court's decision and subpoenaed Urraca to testify at the reopened suppression hearing on February 13, 2018. Testifying pursuant to a material witness warrant, Urraca said he "d[id]n't recall anything about finding gun [sic]." Urraca told the court:

Let me see. The police went to the hotel, that I remember, looking for somebody and they asked me if I could go to a room to open a room for them because they had some guy in custody, and they wanted to get into his room.

. . . .

So, I went to the room, opened the door for them and they asked me to stay outside in the hallway and that was it.

But on cross-examination, Urraca acknowledged he feared defendant and did not want to testify at the hearing. Following Urraca's testimony, the court reserved decision, with the intention of rendering its decision the following day.

Apparently, the trial court thereafter denied defendant's reconsideration motion.[1] We glean from the record that defendant again moved for reconsideration during jury selection in March 2018. According to the court, the prosecutor belatedly disclosed the police report of Detective Edward Colucci while preparing the witness's testimony for trial. Nonplussed by the timing – in view of the prosecutor's immediate disclosure upon learning of the report's existence – the court nonetheless was concerned that the report "raise[d] issues as to the timeline of the recovery of the weapons," Urraca's conduct, and

---

[1] The record on appeal does not contain the order or transcript of the court's decision.

"whether or not . . . Urraca was the catalyst" in finding the weapons. The court therefore ordered a hearing pursuant to N.J.R.E. 104(a) to examine those issues through Colucci's testimony.

Colucci told the court he arrived at the hotel after defendant was handcuffed. He thought Urraca had signed a consent to search the hotel room, but later acknowledged he "assumed" as much and "never had contact with the hotel manager." Colucci believed one of the officers said "[t]he manager wanted all of [defendant's] property removed from the room." Colucci also "heard that there was [sic] two guns recovered" from the room, but he did not know who found them. However, the State recalled Blackwell and Giancaspro, who clarified that Urraca: did not sign a consent to search form for Room 211; found the guns in the hotel room; led the TFOs to the hotel room; and showed the officers where the guns were located.

Notably, on cross-examination, Blackwell told defense counsel a warrant was unnecessary here "where management is essentially evicting someone from the hotel and they want to (indiscernible) property and bring law enforcement in, there's not an issue with that." Conversely, Blackwell testified: "If there's an expectation of privacy and there's no other information brought up by management, I would say yes[,]" a search warrant is necessary.

A-5903-17

The following day, the court rendered an oral decision, denying defendant's second reconsideration motion for the same reasons it had denied defendant's suppression motion. The court was particularly persuaded by the detail and accuracy of Blackwell's testimony. Although the court found Colucci's testimony was "credible" and "direct," the court was "not surprised" that his recollection, which was based largely on hearsay, varied from the other witnesses' testimony. Noting Colucci "didn't know who found the guns," the court concluded Colucci's testimony did not alter its findings as to "the credibility of Detective Blackwell and Detective Giancaspro with regard to the sequence of events and the recovery of the guns."

On appeal, defendant maintains the trial court erroneously determined the State was relieved of its obligation to obtain a search warrant under the private search and community caretaker exceptions. The State concedes "the private search doctrine does not apply to hotel rooms in New Jersey, and the mere presence of handguns in the unoccupied and already secured hotel room did not present exigence sufficient to justify application of the community caretaking doctrine" to seize those weapons. Instead, the State urges us to affirm on grounds other than those expressed by the trial court. See State v. Heisler, 422 N.J. Super. 399, 416 (App. Div. 2011) (stating that an appellate court is "free to

affirm the trial court's decision on grounds different from those relied upon by the trial court"). Those grounds include: (1) defendant's expectation of privacy ceased when Urraca terminated his "tenancy" in Room 211; (2) "the handguns were in plain view when seized"; and (3) the weapons "would have been inevitably discovered."

Our review of a trial judge's decision on a motion to suppress evidence is "highly deferential." State v. Gonzales, 227 N.J. 77, 101 (2016). We "must uphold the factual findings underlying the trial court's decision, provided that those findings are 'supported by sufficient credible evidence in the record.'" State v. Boone, 232 N.J. 417, 425-26 (2017) (quoting State v. Scriven, 226 N.J. 20, 40 (2016)). We do so "because those findings 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Gamble, 218 N.J. 412, 424-25 (2014) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). "We owe no deference, however, to conclusions of law made by trial courts in suppression decisions, which we instead review de novo." State v. Sencion, 454 N.J. Super. 25, 31-32 (App. Div. 2018) (citing State v. Watts, 223 N.J. 503, 516 (2015)).

Our federal and state constitutions both guarantee the right of persons to be free from unreasonable searches and seizures in their homes. U.S. Const.

amend. IV; N.J. Const. art. I, ¶ 7. "The warrant requirement is strictly applied to physical entry into the home because the primary goal of the Fourth Amendment and Article I, Paragraph 7 of the state constitution is to protect individuals from home intrusions." State v. Walker, 213 N.J. 281, 289 (2013).

Fourth Amendment protections prohibiting unreasonable searches and seizures apply equally to leased residential premises. Wright, 221 N.J. at 478. "[L]aw enforcement cannot accept a landlord's invitation to enter a home without a warrant unless an exception to the warrant requirement applies." Ibid. "Absent exigency or some other exception to the warrant requirement, the police must get a warrant to enter a private home and conduct a search, even if a private actor [such as a landlord] has already searched the area and notified law enforcement." Id. at 476. The Court explained: "A landlord, like any other guest, may tell the police about contraband he or she has observed. And the police, in turn, can use that information to apply for a search warrant. But that course of events does not create an exception to the warrant requirement." Id. at 476-77 (citation omitted).

Pertinent to this appeal, the Court's decision in Wright left undisturbed its earlier holding in State v. Hinton, 216 N.J. 211 (2013). In Hinton, the defendant resided in an apartment, which was leased to his mother. Id. at 215. After his

mother died, the landlord instituted an eviction proceeding for non-payment of rent and obtained a warrant of removal. Ibid. The court officer who changed the locks and conducted a safety inspection of the apartment, noticed a box containing heroin and a bag of currency on defendant's bed. Ibid. The court officer summoned police, who confiscated the box without a warrant and arrested the defendant when he returned to the apartment. Ibid.

Because the eviction had proceeded to an "advanced stage" the Court held the "defendant did not have a reasonable expectation of privacy under federal or state constitutional norms." Id. at 216. Even if the "defendant maintained a subjective expectation of privacy, his expectation was objectively unreasonable." Ibid. For purposes of Article I, Paragraph 7, the objective reasonableness of a defendant's expectation of privacy "turns in large part on his or her legal right to occupy the property at issue." Id. at 238. The Court also noted a hotel guest may have a reasonable expectation of privacy in a rental room – until his or her guest status has been terminated. Id. at 232 n.6. Of significance to the present matter, the Court was persuaded, in part, that defendant had been lawfully evicted under the applicable section of the Anti-Eviction Act (Act), N.J.S.A. 2A:18-53 to -71. Id. at 224-26, 239.

Two years ago – and one year after the trial court denied defendant's second reconsideration motion – our Supreme Court decided State v. Shaw, 237 N.J. 588 (2019). In Shaw, the Court made clear that, "hotel guests have a reasonable expectation of privacy in their rooms akin to that held by property owners and tenants." Id. at 610. The Court recognized "a hotel or motel guest's expectation of privacy may be somewhat lesser in consideration of the realities of the relationship between a guest and motel owner." Ibid. But the Court further observed that expectation of privacy "is not so reduced that mere entry by the motel owner can be said to entirely deprive the guest of his or her privacy interests." Ibid. Accordingly, the Court "decline[d] to extend the private search doctrine to hotel and motel rooms." Id. at 610-11. Instead, the Court "reiterated the guidance [it] provided in Wright, where a motel owner or employee finds contraband in a guest's room, 'the police can use that information to obtain a search warrant and then conduct a search.'" Id. at 611 (quoting Wright, 211 N.J. at 478-79). Again, however, the Court did not disturb its previous decision in Hinton.

Against that legal backdrop, we turn to the issues raised on appeal. Because the State concedes the trial court erroneously decided the private search and community caretaking exceptions to the warrant applied here, we need not

16

belabor the application of those doctrines. While we note the trial court ultimately decided the reconsideration motion one year before the Court decided Shaw, we nonetheless agree with the State that "Shaw is a mere extension of the Supreme Court's 2015 decision in Wright." As the Court in Wright specifically recognized, the private search doctrine had never been applied "to the search of a private home" by New Jersey or federal courts. 221 N.J. at 471.

And we agree with the State that "the community caretaking doctrine is not the best fit for [the facts of] this case." No emergency justified application of the community-caretaking exception here, where the room could have been locked and an officer posted outside the door while awaiting approval of a warrant. See State v. Vargas, 213 N.J. 301, 321 (2013) ("Without the presence of consent or some species of exigent circumstances, the community-caretaking doctrine is not a basis for the warrantless entry into and search of a home.").

Instead, we conclude a warrant was unnecessary based upon circumstances here. Defendant lacked a reasonable expectation of privacy in Room 211 when Urraca observed defendant's arrest and immediately took action to remove all his belongings from the room. The testimony adduced at the evidentiary hearings clearly established that Urraca sequentially: witnessed defendant's arrest outside the hotel; entered Room 211; gathered defendant's

belongings and placed them in a bag; returned outside and handed the bag to police; and reentered Room 211 – of his own volition and without police presence – to ensure no other property was left behind. Accordingly, prior to discovering the handguns on his return trip, Urraca had effectively terminated defendant's occupancy and, concomitantly, his privacy interest in Room 211. See Hinton, 216 N.J. at 231.

We therefore find no Fourth Amendment violation by police in seizing the readily visible weapons from the bathroom drawer. See, e.g., State v. Earls, 214 N.J. 564, 592 (2013) (noting police may seize evidence in plain view). Accordingly, we affirm on other grounds. See Heisler, 422 N.J. Super. at 416. In doing so, we are unpersuaded by defendant's argument that the issue was not raised before the trial court. While we recognize the State did not fully brief the issue before the trial court, at the conclusion of the suppression hearing, the State specifically argued that defendant's arrest and Urraca's "actions in requesting that his belongings be removed" from Room 211 were equivalent to an "eviction," thereby "diminish[ing]" defendant's "privacy interests." In its trial brief, the State also noted Urraca's purpose in entering Room 211 was "to clear out the room so that it could be rented to future guests."

A-5903-17

Nor are we persuaded the record was not sufficiently developed to decide this question of law. Notably, the protections of the Act do not apply to transient or seasonal tenants residing at a hotel, motel, or other guest house. See N.J.S.A. 2A:18-61.1 (providing an exception from the Act for "a hotel, motel or other guest house or part thereof rented to a transient guest or seasonal tenant"); see also Francis v. Trinidad Motel, 261 N.J. Super. 252, 258 (App. Div. 1993) (holding the Act did not apply to a transient guest of a hotel who stayed on a weekly basis for more than two months); Poroznoff v. Alberti, 168 N.J. Super. 140, 141-42 (App. Div. 1979) (recognizing the mere assertion that the room was the plaintiff's sole residence was insufficient to establish he was not a transient guest).

In reaching its decision the trial court implicitly recognized defendant's transiency. According to the court: "Urraca, the manager of the Extended Stay America hotel where [defendant] was staying, had approached Detective Blackwell of the Marshals Service and requested that they remove [defendant]'s property from hotel Room 211. [Defendant] was renting the room since August 20th of . . . 2013." Although not specifically referenced by the trial court, the State had appended a copy of defendant's "hotel lease agreement" to its trial

19

brief.[2]  That document, more aptly termed a "Folio Receipt" is dated "as of" August 22, 2013, and indicates an arrival date of August 20, 2013, and a departure date of August 24, 2013.

Accordingly, the evidence presented to the trial court clearly established defendant was a transient hotel guest at the hotel.  Cf. McNeill v. Estate of Lachmann, 285 N.J. Super. 212, 217 (App. Div. 1995) (finding the plaintiff's residence in the hotel for longer than three years, interrupted only when it closed for renovations, and her return thereafter demonstrated it was her "permanent home or domicile" affording her protections under the Act).  Therefore, as a matter of law, defendant's reasonable expectation of privacy in Room 211 terminated upon his arrest and Urraca's immediate repossession of that room.

In view of our decision, we need not reach the State's alternate argument that the weapons would have been inevitably discovered.  For the sake of completeness, however, we are not persuaded by the State's argument that the officers "could have secured a search warrant."  (Emphasis added).

The "inevitable discovery doctrine" is an exception to the exclusionary rule that permits evidence to be admitted in a criminal case, even though it was

_____

[2]  Because defendant included a copy of the State's brief in its reply appendix on appeal, we requested the parties provide the purported "lease agreement" after oral argument before us.

obtained unlawfully, when the government can show that discovery of the evidence by lawful means was inevitable. State v. Holland, 176 N.J. 344, 361-62 (2003). The doctrine recognizes that "the exclusionary rule [is] not served by excluding evidence that, but for the misconduct, the police inevitably would have discovered. If the evidence would have been obtained lawfully . . . exclusion of the evidence would put the prosecution in a worse position than if no illegality had transpired." State v. Sugar (II), 100 N.J. 214, 237 (1985).

In order to invoke the inevitable discovery doctrine, the State must prove by clear and convincing evidence that:

> (1) proper, normal and specific investigatory procedures would have been pursued in order to complete the investigation of the case; (2) under all of the surrounding relevant circumstances the pursuit of those procedures would have inevitably resulted in the discovery of the evidence; and (3) the discovery of the evidence through the use of such procedures would have occurred wholly independently of the discovery of such evidence by unlawful means.
>
> [Id. at 238 (emphasis added).]

The inevitable discovery doctrine was not available here, where Giancaspro expressly testified the officers "decided not to" apply for a warrant. Accordingly, the evidence would not have been inevitably discovered under that doctrine.

21

II.

We turn briefly to defendant's contentions raised in points II and III, which challenge his convictions on counts eight and nine for second-degree possession of a firearm during a certain drug offense under N.J.S.A. 2C:39-4.1(a). Relying in large part on our Supreme Court's decision in State v. Spivey, 179 N.J. 229 (2004), defendant contends the trial court erroneously denied his motion for judgment of acquittal and issued inadequate jury instructions on those charges.

We review de novo the trial court's decision on a motion for judgment of acquittal, and we apply the same standard the trial court applied in ruling on the motion. State v. Jones, 242 N.J. 156, 168 (2020). The motion should be denied if "based on the entirety of evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony, a reasonable jury could find guilt beyond a reasonable doubt." State v. Williams, 218 N.J. 576, 594 (2014) (citing State v. Reyes, 50 N.J. 454, 458-59 (1967)). The motion should be granted only when "the evidence is insufficient to warrant a conviction." R. 3:18-1.

Defendant asserts the State failed to "provide any evidence of a nexus between" the handguns seized from the bathroom drawer and the drugs recovered from the bushes outside the hotel. Defendant's argument ignores our

Supreme Court's interpretation of N.J.S.A. 2C:39.4.1(a): "The statutory language does not suggest that the weapon must be in close proximity to defendant to constitute a violation of N.J.S.A. 2C:39-4.1(a). Had the statute read 'armed with a firearm while in the course of committing' a specified crime, the outcome might be different." Spivey, 179 N.J. at 239. Although the Court recognized the term, "while in the course of committing a crime" suggests "a temporal and spatial link between the possession of the firearm and the drugs that defendant intended to distribute," the Court declined to "limn the multitude of scenarios that would permit the drawing of a reasonable inference that a firearm is possessed while in the course of committing a drug offense." Id. at 240.

In the present matter, sufficient evidence was presented through the testimony of Blackwell that defendant tossed the bags of cocaine into the bushes after he exited the hotel and saw police, and Urraca informed the TFOs he found two handguns in a bathroom drawer of Room 211 minutes after defendant was arrested. The State also introduced a monitored jail telephone call between defendant and an acquaintance during which defendant acknowledged: "They took the guns. They took the drugs. They took everything." That evidence

23

supports a reasonable inference that the handguns and drugs were "related to common purpose." Id. at 240.

Because defendant did not raise an objection to the jury instruction for counts eight and nine before the trial court, we view his contentions through the prism of the plain error standard. R. 2:10-2. Defendant now asserts the court failed to instruct the jury that it must find a temporal and spatial link between the handguns seized from the hotel room and the drugs recovered from the bushes.

We are not persuaded by defendant's belated assertions here, where the court's instructions to the jury tracked the model jury charge, which is consistent with N.J.S.A. 2C:39.4.1(a). See Model Jury Charge (Criminal), "Possession of Firearm While Committing Certain Drug Crimes (N.J.S.A. 2C:39-4.1(a))" (approved Mar. 22, 2004). A jury charge that tracks the language of the governing statute, and which is consistent with the applicable Model Jury Charge, is not plainly erroneous. State v. Rodriguez, 365 N.J. Super. 38, 53-54 (App. Div. 2003); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 8.1 on R. 1:8-7 (2021) ("Use by the court of model jury charges is recommended as a method, albeit not perfect, for avoiding error.").

## III.

Finally, we direct the trial court to amend the JOC to remove the fines assessed on count seven, possession of CDS. The court appropriately merged that count with count six, possession with intent to distribute CDS, but the fines were incorrectly duplicated. The amended JOC shall also remove the merged count from the list of final charges.

Affirmed but remanded to correct the JOC.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5903-17