**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0126-23

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

KATHERINE L. BELL,

    Defendant-Respondent.

_____

Argued January 10, 2024 – Decided April 29, 2024

Before Judges Vernoia, Gummer and Walcott-Henderson.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Union County, Indictment Nos. 22-06-0469, 22-06-0470, and 22-06-0471.

Milton Samuel Leibowitz, Assistant Prosecutor, argued the cause for appellant (William A. Daniel, Union County Prosecutor, attorney; Milton Samuel Leibowitz, of counsel and on the brief).

Stefan Van Jura, Assistant Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora,

Public Defender, attorney; Stefan Van Jura, of counsel
and on the brief).

PER CURIAM

By leave granted, the State appeals from an order entered on August 15, 2023, denying its motion to admit evidence and granting defendant's motion to suppress a handgun, bullets, and a key fob found in a purse recovered from a vehicle that had been reported stolen and in which defendant Katherine Bell was a passenger. The State argues that because it presented sufficient unrebutted facts establishing defendant knew the vehicle was stolen, she had no reasonable expectation of privacy in the vehicle or purse, and the search of the purse that resulted in the seizure of the evidence was lawful. We agree and reverse.

I.

We glean the following relevant facts from the motion record, including the parties' briefs and police reports provided by defendant, submitted to the trial court pursuant to Rule 3:5-7.[1] Officers from the Elizabeth Police Department reported to a shopping mall on a complaint of a carjacking involving two victims, Brandon Ortiz and Kimberly Lopez. Ortiz and Lopez had driven to the mall in Lopez's white Honda Civic. They reported to the police that after they

---

[1] As we explain, Rule 3:5-7 provides the procedure for the court's consideration of motions to suppress physical evidence seized during a warrantless search.

A-0126-23

had parked the vehicle, two women, whom they later identified as defendant and Ciara Turner, pulled into the parking spot next to them in a blue Honda Accord. According to Lopez, defendant and Turner exited their vehicle and accused Lopez of striking the Honda Accord. Ortiz later told police that defendant then pulled a black handgun from a "small yellow purse" and struck him in the face. Lopez told police Turner had confronted her and demanded her car keys and phone, and she dropped her keys, phone, and purse—a small brown Michael Kors crossbody, "backed away from [Turner]," and ran towards the mall after Turner "threatened to shoot [her]." Both vehicles were later seen on security video leaving the mall by different exits.

Lopez and Ortiz called 9-1-1 and reported they had been carjacked. They gave a description of the perpetrators, including that one "suspect had a tattoo on her face and that [Lopez] would be able to identify [the person later identified as defendant] if she saw [her] again." The police report notes that Lopez had described the person later identified as defendant as "a Black Female[,] wearing an orange puffer jacket, a durag, [with] a tattoo on her upper cheek bone, also armed with a black handgun." Lopez described the person later identified as Turner as "a Black Female [] wearing a blue face mask and a black Hoody, also armed with a black handgun."

3

Later that same afternoon, the cars were caught on traffic cameras passing through an intersection in Newark together. Approximately two hours later, after being alerted about the carjacking by dispatch, Newark police officers observed a white Honda Civic matching the description of Lopez's vehicle and followed it into a nearby parking lot. An officer removed the driver, Turner, from the vehicle while another officer approached defendant who was seated in the front passenger seat. The officer asked defendant to step out of the vehicle, but she initially refused, asking, "what for?" Defendant eventually exited the vehicle and was placed in handcuffs and into a police vehicle.

The next morning, an officer processed the impounded Civic recovered from defendant and Turner and identified, marked, and inventoried several items found inside the vehicle, including: a beige Guess purse with faux fur that was found on the rear passenger-side seat and contained a key fob and a handgun loaded with seven rounds, including a hollow-point bullet; and another beige purse containing a Families First card belonging to Turner. Neither purse found in the vehicle matched the description Lopez had provided of the small, brown, Michael Kors crossbody that had been stolen from her.

However, the police reports defendant submitted pursuant to Rule 3:5-7 in support of her motion to suppress the handgun, bullets, and key fob found in

the Guess purse recovered from the Civic revealed that police had evidence prior to the search that the purse matched the description Ortiz had provided of the yellow purse from which one of the carjackers had pulled a gun during the carjacking.

Two days after the post-impound search of the vehicle and the discovery of the Guess purse with the handgun, bullets, and key fob, Ortiz and Lopez identified defendant and Turner as the carjackers from police photo arrays. The key fob found in the beige Guess purse recovered from Lopez's Civic belonged to the Accord the carjackers had driven to the crime scene and in which one of the carjackers had fled the crime scene.

A Union County Grand Jury returned an indictment charging defendant with first-degree carjacking, N.J.S.A. 2C:15-2(a)(2); first-degree robbery, N.J.S.A. 2C:15-1(a)(1); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); fourth-degree possession of prohibited weapons and devices-defaced firearm, N.J.S.A. 2C:39-3(d); fourth-degree possession of prohibited weapons and devices – hollow-point bullet, N.J.S.A. 2C:39-3(f)(1); third-degree aggravated assault with a deadly weapon, N.J.S.A 2C:12-1(b)(2);

5

and fourth-degree aggravated assault – pointing a firearm, N.J.S.A. 2C:39-7(b)(1).

The State later moved to "admit any and all of the evidence seized from the blue Accord and the white Civic, including but not limited to" the contents of the beige Guess purse with faux fur—the handgun, the bullets, and the Honda key fob for the blue Accord. Defendant moved to suppress this same evidence.[2]

On February 17, 2023, the State presented a letter brief in accordance with Rule 3:5-7 in support of its claim the evidence seized from the Civic, including the Guess purse and its contents, was the product of a lawful warrantless search. In the brief the State summarized the facts surrounding the carjacking and defendant's arrest after she was found in the carjacked vehicle. The State also asserted in part defendant knew the car was stolen and, therefore, had no reasonable expectation of privacy in the stolen car or its contents based on our holding in State v. Lugo that "a defendant operating an automobile known by him to have been stolen has no reasonable expectation of privacy respecting

---

[2] "Rule [3:5-7(c)] provides that the filing of a motion by a defendant . . . triggers a requirement that 'the State submit a brief containing a statement of facts and the defendant file a brief and counterstatement of facts.'" State v. Green, 346 N.J. Super. 87, 90 (App. Div. 2001) (quoting State v. Hewins, 166 N.J. Super. 210, 213–15 (Law Div. 1979), aff'd, 178 N.J. Super. 360 (App. Div. 1981)).

contraband he had hidden in it—no matter how the contraband is packaged."

249 N.J. Super. 565, 568 (App. Div. 1991).

The State also argued there was no need for an evidentiary hearing on the legality of the search of the Civic and Guess purse, asserting the undisputed facts establish the legality of the search. The State explained:

> The State submits, therefore, that there is no doubt that a defendant is entitled to an evidentiary hearing if a dispute as to a material fact as to a Fourth Amendment issue has been presented to the court, but only if such has been presented. Should no such question exist, a defendant cannot demand testimony from the State's witnesses and must limit his argument to the application of Fourth Amendment law to the facts already submitted to the court. Thus far, the State is unaware of any dispute as to a material fact as to a Fourth Amendment issue. Although [defendant] has yet to file a brief and has thus not had the opportunity to attempt to identify a dispute, the State submits that defense will be unable to identify a material dispute.

In response, defendant in her letter brief reiterated the facts set forth in the State's brief and acknowledged the Civic had been stolen, but she did not address or dispute the State's contention that she knew the vehicle was stolen when the police found her and Turner in it. Defendant did not concede ownership of the Guess purse—where the gun, bullets, and key fob were found. Instead, she asserted a privacy interest only in the contents of the vehicle, including the Guess purse. Further, she argued Lopez was not able to consent

to the search "of the opaque Guess purse that was not [Lopez's] and did not belong to [Lopez]."[3]

The court heard oral argument on defendant's suppression motion and the State's motion to admit evidence of the contents of the two vehicles including, the gun, bullets, and key fob seized from the Guess purse. The court did not conduct an evidentiary hearing and did not make findings as to whether an evidentiary hearing was required based on its review of the parties' submissions under Rule 3:5-7. Instead, the court relied on the State's claim a hearing was unnecessary, finding:

> [t]he State has urged this court on multiple occasions not to have any testimony concerning this search. Well, the [S]tate got what it wants. There's no testimony. . . . So without testimony and without the automobile exception, the [motion to suppress] has merit and the State has failed to establish that this warrantless search, which is presumptively invalid [] should be allowed.

---

[3] Defendant also argued that an evidentiary hearing was required to determine the admissibility of statements made to the arresting officers, asserting a "hearing is necessary to establish the scope and content of the statements that the State intends to elicit in its case [in] chief as the State has made no clear proffer of what those statements are and the defendant is entitled to know what they intend to elicit in order to challenge their admissibility." We do not address the argument because the admissibility of any purported statements is not an issue presented for our consideration.

8                                                          A-0126-23

The court rejected the State's arguments in support of the admission of the contents of the Guess purse—without explicitly addressing, or making findings as to, the State's argument that defendant did not have a reasonable expectation of privacy in the Guess purse under Lugo, 249 N.J. Super. at 568, because she knew the car had been stolen. Rather, the court focused on whether the warrantless search of the Guess purse was valid because it had been abandoned or based on Lopez's consent to search her vehicle. The court stated:

> there was no testimony . . . [t]he body worn cameras of the officers were not submitted . . . the court has no information regarding the ability of the defendant to abandon the purse in the car or if she was instructed to leave the purse in the car,
>
> . . . .
>
> by the time the police searched the Civic, they had already interviewed Ms. Lopez and Mr. Ortiz. Ms. Lopez explained that her purse was a small, brown, Michael Kors crossbody. At the time of the search, the police were aware that the [Guess purse] did not belong to the victims. It was objectively unreasonable of them to believe that Ms. Lopez had the authority to consent to a search for [a] purse that did not belong to her.

The court concluded that Lopez's consent to search the vehicle did not constitute permission to search the Guess purse because, based on Lopez's description of the purse stolen from her, the police knew the Guess purse was not hers. The court also rejected the State's claim defendant had abandoned the

9

purse in the vehicle. The court further stated, "there is no question that the stop of the Civic and the arrest of the defendant were valid and supported by ample probable cause[,]" but "the search of the vehicle, and the search of the purse, did not take place in the field at the time of arrest." The court entered an order granting defendant's motion to suppress evidence seized from the Guess purse.

Thereafter, the State sought, and the court granted, a stay pending appeal. We then granted leave to appeal.

The State presents a single argument on appeal:

> The trial court erroneously suppressed the evidence found in the stolen Honda Civic by incorrectly finding the State failed to meet its burden to establish defendant did not have a reasonable expectation of privacy in the vehicle that she stole and, thus, the interest of justice demands the State's motion for leave to appeal be granted.

The State does not challenge the court's determination that the search of the purse was improper because it was not supported by either Lopez's consent to search her vehicle or defendant's alleged abandonment of the purse in the vehicle. Instead, the State argues the search of the purse was proper because the State's Rule 3:5-7 proffer provided facts establishing that the purse was found with defendant in a vehicle—the carjacked Honda Civic—she knew was stolen

and, therefore, she had no reasonable expectation of privacy in the purse supporting suppression of its contents.

## II.

The scope of review of a decision on a motion to suppress is limited. State v. Ahmad, 246 N.J. 592, 609 (2021); State v. Nelson, 237 N.J. 540, 551 (2019); State v. Boone, 232 N.J. 417, 425 (2017); State v. Robinson, 200 N.J. 1, 15 (2009). "Generally, on appellate review, a trial court's factual findings in support of granting or denying a motion to suppress must be upheld when 'those findings are supported by sufficient credible evidence in the record.'" State v. A.M., 237 N.J. 384, 395 (2019) (quoting State v. S.S., 229 N.J. 360, 374 (2017)). Appellate courts must consider the suppression motion solely on the evidence presented at the hearing below. See State v. Gibson, 318 N.J. Super. 1, 9 (App. Div. 1999).

"The New Jersey Constitution provides greater protections from warrantless searches and seizures than the Fourth Amendment of the Constitution of the United States." State v. Shaw, 237 N.J. 588, 616 (2019) (citing State v. Alston, 88 N.J. 211, 226 (1981)). Under our Constitution, we recognize a legitimate expectation of privacy standard that cuts broader than the Federal counterpart. Alston, 88 N.J. at 228.

A-0126-23

"[U]nder Article I, Paragraph 7 of the New Jersey Constitution, 'a criminal defendant is entitled to bring a motion to suppress evidence obtained in an unlawful search and seizure if he has a proprietary, possessory or participatory interest in either the place searched or the property seized.'" State v. Randolph, 228 N.J. 566, 581 (2017) (quoting Alston, 88 N.J. at 228). This standard's broader protections advance three important State interests, State v. Johnson, 193 N.J. 528, 543 (2008), which our Court has summarized as follows:

> The first is the State's interest in protecting defendants from having to admit possession to vindicate their constitutional right against unreasonable searches and seizures. The second is to prevent the State from arguing a defendant should be subject to criminal liability for possessing contraband, while asserting the same defendant had no privacy interest in the area from which police obtained the contraband without a warrant. Our third aim is to increase privacy protections for our citizens and to promote respect for our Constitution by discouraging law enforcement from carrying out warrantless searches and seizures where unnecessary.
>
> [Shaw, 237 N.J. at 616 (citations omitted).]

Both the federal and state constitutions afford protection against unreasonable searches that occur in areas where people have a legitimate expectation of privacy that society is prepared to recognize. State v. Hinton, 216 N.J. 211, 229 (2013). To establish a legitimate expectation of privacy in a

12

place or object that is searched under the Fourth Amendment, a defendant must demonstrate (1) '"an actual (subjective) expectation of privacy"' in the object of the challenged search, and (2) that his or her subjective privacy expectation is '"one that society is prepared to recognize as reasonable."' State v. Evers, 175 N.J. 355, 369 (2003) (quoting Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)).

"Unlike the federal test, the New Jersey constitutional standard does not require the defendant to prove a subjective expectation of privacy. . . . Instead, Article I, Paragraph 7 . . . 'requires only that an expectation of privacy be reasonable.'" Hinton, 216 N.J. at 236 (quoting State v. Hempele, 120 N.J. 182, 200 (1990)). "'Expectations of privacy are established by general social norms,' and must align with the 'aims of a free and open society.'" State v. Taylor, 440 N.J. Super. 515, 523 (App. Div. 2015) (quoting Hempele, 120 N.J. at 200-01).

"On a defendant's motion to suppress evidence seized in a warrantless search, the State must set forth its factual allegations in its brief." State v. Carrillo, 469 N.J. Super. 318, 332 (App. Div. 2021) (citing R. 3:5-7(b)). In response, a defendant is required to file "a brief and [counterstatement] of facts. . . ." R. 3:5-7(b); see also State v. Torres, 154 N.J. Super.169, 173 (App. Div. 1977) (explaining Rule 3:5-7(b)'s "clear and unambiguous" language does

not require a defendant to file an affidavit supporting his counterstatement of facts on a motion to suppress evidence seized during a warrantless search).

Rule 3:5-7(c) requires a testimonial hearing on a motion to suppress evidence seized without a warrant "[i]f material facts are disputed[.]" To establish a dispute as to material facts, "a defendant must do more than allege baldly that the search warrant was unlawful." Carrillo, 469 N.J. Super. at 332. "[F]actual allegations which are general and conclusory or based on suspicion and conjecture [do] not suffice" to establish a dispute of material facts warranting a testimonial hearing. State v. Hewins, 166 N.J. Super. 210, 215 (Law Div. 1979) (quoting Cohen v. United States, 378 F.2d 751, 760 (9th Cir. 1967)), aff'd, 178 N.J. Super. 360 (App. Div. 1981). In its consideration of a motion made under the Rule, a court must review the proffers of the parties to determine if there are fact issues material to the determination of the validity of the search. Carrillo, 469 N.J. Super. at 333.

We do not accord deference to a court's determination there is no need for an evidentiary hearing on a motion to suppress based on a determination, made after a review of the parties' briefs, that there are no "material facts" in dispute.[4]

---

[4] A determination whether a factual dispute exists such that an evidentiary hearing is required under Rule 3:5-7 is an issue to be decided by the trial court

14

"Determining . . . if facts are in dispute is a matter of law" that may be made by "examin[ing] side-by-side the parties' allegations." Ibid. The determination of whether facts are material also presents an issue of law we review de novo. Ibid.

### III.

The State argues the court erred by granting defendant's suppression motion by failing to properly consider and address its claim defendant did not have a reasonable expectation of privacy in the purse because it was found with her in a vehicle she knew had been stolen. The State's argument requires that we consider our decisions in Lugo, and Taylor.

In Lugo, we addressed the defendant's privacy interest in a brown paper bag discovered in an alleged stolen vehicle during an impound search. 249 N.J. Super. at 568. We held: "[a] defendant operating an automobile known by him to have been stolen has no reasonable expectation of privacy respecting contraband he had hidden in it . . . ." Ibid. (emphasis added). Since Lugo, however, we have "decline[d] the State's invitation to formulate a bright-line rule, as a matter of law, that an individual operating or occupying a stolen motor

_____

based on its review of the parties' submissions. It is not a determination made by either the State or the defendant.

vehicle, regardless of their knowledge of its status, does not have a reasonable expectation of privacy," Taylor, 440 N.J. Super. at 523.

In Taylor, another case involving warrantless searches—the first conducted on the roadway and the second, post-impound—of a stolen motor vehicle in which the defendant had been a passenger, the defendant appealed the denial of his motion to suppress the evidence found from the two searches: guns and a magazine. Id. at 519-20.

In Taylor, New Jersey State troopers initiated a stop of a motor vehicle they had observed weaving in and out of traffic on the Turnpike. Id. at 518. Taylor was one of three individuals in the vehicle—a backseat passenger—and while the driver produced a valid license, she also advised troopers that the vehicle did not belong to her. Id. at 519-20. Troopers ran a check of the vehicle's identification number and confirmed that the vehicle had been reported stolen several months earlier. Id. at 519.

All three occupants of the vehicle were subsequently arrested, and troopers conducted an initial search at the side of the roadway, which revealed the presence of two handguns, one located under the driver's seat and the other in the trunk. Ibid. Days later, after the vehicle had been impounded in a private yard, an attendant searching for keys to the vehicle discovered a handgun

magazine and reported it to police. Id. at 520. Defendant filed a motion to suppress the evidence found in the initial automobile search revealing two handguns and the post-impound discovery of the handgun magazine.[5] Ibid.

The motion court, relying on Lugo and without an evidentiary hearing, concluded that it was unreasonable for there to exist an expectation of privacy in a stolen vehicle as a matter of law. Ibid. We determined that a critical fact considered by the court in Lugo was that defendant was operating an automobile known to him to have been stolen. Id. at 523. And, we rejected the State's repeated "strict liability" arguments that knowledge of the vehicle's status— whether stolen or not—is irrelevant to a determination of a defendant's reasonable expectation of privacy. Ibid. As we expressly noted, "the question of whether defendant had a reasonable expectation of privacy in the motor vehicle cannot be solely determined as a matter of law, but requires a fact-sensitive inquiry." Ibid.

Consistent with Taylor and Lugo, and as argued by the State to the motion court, a critical issue here is whether defendant knew the vehicle ~~was~~ stolen. If defendant knew the car had been stolen, she had no reasonable expectation of

_____

[5] We recognize that in Taylor, the court made no distinction between the initial search on the roadway which yielded the recovery of two guns, or the post-impound inadvertent discovery of the handgun magazine. Id. at 519-20.

17                                                            A-0126-23

privacy in the Guess purse in the vehicle in which the gun, bullets, and key fob were found and defendant's motion to suppress should have been denied. See Lugo, 249 N.J. Super. at 568 ("a defendant operating an automobile known by him to have been stolen has no reasonable expectation of privacy respecting contraband he had hidden in it-no matter how the contraband is packaged."); accord Taylor, 440 N.J. Super. at 525.

Rule 3:5-7 provides the procedures for a motion to suppress evidence seized without a warrant and, as enunciated in Carrillo, in its consideration of a motion made under the Rule, the court must review the proffers of the parties to determine if there are fact issues material to the determination of the validity of the search. 469 N.J. Super. at 333. Here, to address the State's argument the search of the Guess purse was supported under Lugo, the court was required to determine if the parties' submissions established a fact issue as to whether defendant knew Lopez's Civic had been stolen. Ibid.

On February 17, 2023, the State presented its letter brief pursuant to Rule 3:5-7, in which it asserted defendant knew the Civic in which she was found had been stolen and that if that fact was uncontested:

> a defendant cannot demand testimony from the State's witnesses and must limit [her] argument to the application of Fourth Amendment law to the facts already submitted to the court. Thus far, the State is

unaware of any dispute as to a material fact as to a Fourth Amendment issue.

Specifically, as to defendant's knowledge the car had been stolen, the State argued:

> The defendant does not have a legitimate reasonable expectation of privacy inside the White Honda Civic because she knew it was stolen.
>
> Defendant knew the vehicle was stolen because she assisted in stealing it. . . . [T]he victims described defendant as having been the driver of the Blue Honda Accord and as having been the first suspect to draw a firearm, which she had in her small purse. A purse was found in the backseat of the White Honda Civic with a firearm and with the vehicle key for the same Blue Honda Accord. The victim's phone, which she had removed from the vehicle and was then taken from her, was found in the White Honda Civic in the center console. Although the State submits the above is sufficient, even were more factual support to be required, there are other factors that also show defendant knew the White Honda Civic was stolen. The vehicle was found within hours of when it was stolen. No one provided any documentation for the vehicle nor any explanation for why they were in the vehicle or when/how they entered the vehicle.[6]

---

[6] We do not consider the State's argument that defendant's silence when questioned by the arresting officer suggested personal knowledge about the vehicle being stolen. Defendant had the right to remain silent, and her failure to refute an officer's statement, at least in this context, cannot be properly relied upon to suggest knowledge of anything. See State v. Kucinski, 227 N.J. 603, 617 (2017) ("[o]ur state-law privilege against self-incrimination offers broader

19

In response, defendant acknowledged the vehicle was stolen and did not address or dispute any of the facts the State had cited in support of its claim she knew the car had been stolen. In fact, her proffer actually included additional information supporting a conclusion the car had been stolen—the police report defendant submitted in opposition to the State's submission stated that the purse which was found on the seat behind defendant in the car fit the description of the purse from which one of the carjackers had pulled the gun.

Having reviewed the record de novo, Carrillo, 469 N.J. Super. at 333, we conclude the State's unchallenged statement of facts are sufficient to establish defendant knew the vehicle in which she was found had been stolen. Nonetheless, based solely on our consideration of the undisputed facts presented in the parties' Rule 3:5-7 submissions, we are convinced the State established defendant knew the Civic had been stolen when she and Turner were stopped and arrested. Thus, defendant had no expectation of privacy in the contents of the vehicle, including the contents of the Guess purse found therein. See Taylor, 440 N.J. Super. at 523.

---

protection than its federal counterpart under the Fifth Amendment.") (quoting State v. Muhammad, 182 N.J. 551, 568 (2005)).

More particularly, our side-by-side review of the parties' proffered statements reveals that defendant did not contest the State's assertion she knew the car was stolen. Additionally, police initiated the stop of Lopez's vehicle in Newark a mere few hours after the carjacking and it contained two individuals, defendant and Turner, who fit the descriptions of the perpetrators provided by the victims in the first police report. Defendant was the passenger discovered in Lopez's vehicle. And, a purse fitting the description of the one from which the gun was pulled during the carjacking was found on the rear seat of the vehicle, directly behind where defendant sat in the stolen vehicle. Collectively, these facts give rise to an inference, by a preponderance of the evidence, that defendant was one of the carjackers and, thus, knew the vehicle in which she was found was had been stolen.

We note the motion court did not perform the required side-by-side comparison of the parties' Rule 3:5-7 submissions and, further, did not make any findings of fact or conclusions of law addressing the State's argument that the search of the purse was proper under Lugo and Taylor because it was seized from a vehicle in which defendant was found and the undisputed facts permitted a reasonable inference she knew was stolen. However, because the determination of the undisputed facts based on the parties' submissions under

21

the Rule, and the application of such undisputed facts to the applicable law governing the propriety of the search constitute legal issues we review de novo, for the reasons we have stated we conclude the search was valid because defendant did not have a reasonable expectation of privacy in the purse in which the gun, bullets, and key fob were found.   See Carrillo, 469 N.J. Super. at 333; Lugo, 249 N.J. Super. at 568; Taylor, 440 N.J. Super. at 525.

We therefore reverse the court's order suppressing the contents of the Guess purse.  We remand for further proceedings consistent with this opinion.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22